UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| IN RE BIG LOTS, INC. SHAREHOLDER LITIGATION | Case No. 2:12-cv-00445-MHW-KAJ |

**NOMINAL DEFENDANT BIG LOTS, INC.'S
REPLY IN SUPPORT OF MOTION TO STAY**

There is only one question properly before the Court at this stage of the proceedings:  Has the Special Litigation Committee ("SLC") been granted sufficient authority by the Company to support a stay under Ohio law?  The answer to this question is unequivocally yes, and Plaintiffs do not contend otherwise.  Accordingly, this Court should stay all proceedings in this case until the SLC has had sufficient time to evaluate the merits of the derivative claim and to determine whether continued litigation of the case is in the best interests of the Company.

I.  **ARGUMENT**

It is settled law that "a corporation may appoint a special litigation committee to investigate claims presented in a derivative action."  *Booth Family Trust v. Jeffries*, 640 F.3d 134, 138 (6th Cir. 2011).  A properly created and empowered special litigation committee is entitled to a reasonable stay of the proceedings to permit the committee to complete its work.  *In re Gas Natural, Inc.*, No. 1:13-CV-02805, 2014 U.S. Dist. LEXIS 184046, at *78 (N.D. Ohio Sep. 24, 2014); *see also Rosenbloom v. Pyott*, No. SA CV 10-1352-DOC (MLGx), 2014 WL 10988342, at *2 (C.D. Cal. Dec. 8, 2014) ("Courts routinely grant stays of six to ten months in order to provide such SLCs with reasonable time to carry out its investigation."); *In re Oracle Corp. Derivative Litig.*, 808 A.2d 1206, 1211 (Del. Ch. 2002) ("[T]his court has acknowledged

its **duty** to stay derivative actions at the instance of a special litigation committee, pending the investigation and report of the Committee.") (citations and quotations omitted) (emphasis added); *Katell v. Morgan Stanley Grp., Inc.*, No. CIV.A. 12343, 1993 WL 390525, at *4 (Del. Ch. Sept. 27, 1993) (finding that the law "**requires** that all proceedings in this action be stayed pending the [Special Litigation] Committee's investigation") (emphasis added); *Kaplan v. Wyatt*, 484 A.2d 501, 510 (Del. Ch. 1984) (noting that "[i]t is a **foregone conclusion** that such a stay must be granted" because otherwise the rationale behind the creation of an SLC, "i.e., the inherent right of the board of directors to control and look to the well-being of the corporation in the first instance, collapses") (emphasis added).

The only exception to the rule requiring a stay of litigation pending an SLC investigation that has ever been recognized by any Ohio court[1] is triggered if the SLC is not properly empowered to later dismiss the action in which the stay was requested. *See Gas Natural*, 2014 U.S. Dist. LEXIS 184046, at *78-79; *see also* Mot. at 4 n.3.[2] In *Gas Natural*, the court found that judicial economy weighed in favor of denying the stay because "it [was] not at all clear that, after completing its investigation, the Special Committee [would have] any authority to seek dismissal of this consolidated action." 2014 U.S. Dist. LEXIS 184046, at *79.

Here, Plaintiffs do not dispute that the SLC has been charged with the appropriate mandate—nor could they, because the Company's Board of Directors clearly, completely, and irrevocably granted the SLC full authority to investigate the claims in this case and to determine

---

[1] Plaintiffs' citation to *Booth* is misleading. Plaintiffs state: "Indeed, as the Sixth Circuit Court of Appeals has held, 'the mere appearance of the [SLC]'s lack of independence is enough to deny [the defendant's] motion . . . .' *Booth*, 640 F.3d at 145." Opp'n at 12. Plaintiffs misleadingly imply that the "motion" at issue in *Booth* was a motion for a stay, but that is wrong. In *Booth*, the SLC had conducted its investigation and concluded that it was not in the company's best interest to pursue the claims in the case, and thus the company moved to dismiss. Only at that point, in the context of a motion to dismiss upon recommendation of the SLC, did the court deem it appropriate to consider the SLC's independence. *Booth*, 640 F.3d at 138-39.

[2] Nominal Defendant Big Lots, Inc.'s Motion to Stay, filed October 20, 2016 (Doc. 76).

17835648.1

what action to take in the best interests of the Company, including the authority to move to dismiss this case if the SLC determines that pursuing such claims is not in the Company's best interests.  Robins Aff. ¶¶ 4-5.  Under Ohio law, that should end the inquiry.

Plaintiffs ask this Court to ignore this settled law and instead to force the Company to engage in costly and duplicative litigation based upon contentions that are not properly raised at this stage and that in any event are without merit.  Plaintiffs make four arguments: (1) that the request for a stay is untimely; (2) that the SLC members have prejudged the claims; (3) that a stay will burden witnesses and the Company; and (4) that a stay will prejudice Plaintiffs.  Each of Plaintiffs' arguments fails.

### A. The Request For A Stay Is Timely

There is nothing "untimely" about the Company's request for a stay.  *See* Opp'n at 2.  Not until early this year was it was even clear that Plaintiffs had stated a claim that would allow this derivative action to proceed, and thus until that time there was nothing for an SLC to investigate or pursue.  After dismissing all of Plaintiffs' claims as legally deficient (Doc. 44), this Court granted Plaintiffs leave to replead their sole remaining claim in August 2015 (Doc. 56) and denied Plaintiffs' motion to reconsider the dismissal of all other claims on January 27, 2016 (Doc. 65).

After Plaintiffs' motion for reconsideration was denied, the parties promptly entered mediation and held discussions in an effort to reach a potential settlement.  Concurrent with mediation efforts the parties engaged in document discovery.  Those settlement efforts continued until July 2016, when it ultimately became clear that a settlement would not be reached.  During that time, the Company reasonably saw settlement efforts as an efficient approach to resolving

the remaining claim, and it would have been wasteful to carry out an SLC investigation during that time.

In accordance with the Company's common sense approach to this litigation, courts consistently have approved the formation of SLCs after the resolution of any motions to dismiss. *See Rosenbloom*, 2014 WL 10988342, at *1 (granting a stay where the complaint was first filed in September 2010, the motion to dismiss briefing and appeals process continued through September 2014, and the SLC was formed in October 2014); *Strougo ex rel. Brazil Fund, Inc. v. Padegs*, 986 F. Supp. 812, 814, 816 (S.D.N.Y. 1997) (granting defendants' motion for a stay after granting in part and denying in part defendants' motions to dismiss); *Kahn v. Kolberg Kravis Roberts & Co., L.P.*, 23 A.3d 831, 835 (Del. 2011) (noting that the SLC's motion to stay the action had been granted following the court's denial of defendants' motion to dismiss); *In re InfoUSA, Inc. S'holders Litig.*, No. CIV.A. 1956-CC, 2008 WL 762482, at *1-3 (Del. Ch. Mar. 17, 2008) (finding that plaintiffs' argument "that the committee was somehow formed 'too late' [] misses the mark" and granting a stay where the SLC was formed after the court denied defendants' motion to dismiss). Further, courts regularly grant stays despite the motion being made several years after the case was originally filed, or after discovery has taken place. *See Buerger v. Apfel*, No. 6539-VCL, 2012 WL 4896664 (Del. Ch. Oct. 12, 2012) (granting stay after plaintiffs had successfully opposed defendants' motion for judgment on the pleadings, filed an amended complaint, propounded four sets of document requests and three sets of interrogatories, reviewed documents located at the company, reviewed documents to produce to defendants, and participated in ten meet-and-confer discussions. *See* Plaintiffs' Opposition to Motion to Stay Pending Investigation By Special Litig. Comm. and to Vacate Case Scheduling Order, Buerger v. Apfel, No. 6539-VCL, 2012 WL 4896664 (Del. Ch. Oct. 9, 2012)

(No. 60710025), 2012 WL 4891291.); *Weiser v. Grace*, No. 106285/95, 1997 WL 34850180 (N.Y. Sup. Ct. Aug. 25, 1997) (allowing two targeted discovery requests to proceed but otherwise granting defendants' motion to stay notwithstanding plaintiffs' objection that "the action has been pending for two years and there has already been substantial discovery").

After it became clear by July 2016 that the parties' mediation efforts would not result in a settlement, the Company acted promptly to create an SLC. On August 1, without even waiting for the next regularly-scheduled Board meeting, the Board created the SLC by action in writing, and the SLC met later in August and retained independent counsel. Robins Aff. ¶ 2. During September, the SLC and its counsel began their work and the Company prepared this motion for a stay. The motion was then filed in October.[3]

Plaintiffs' reliance on a handful of out-of-circuit cases in support of their timeliness argument is misplaced. *First*, two of the cases cited by Plaintiffs involved situations where the litigation already had been substantially delayed. In *Carlton*, the litigation had been subject to "substantial stays" prior to the SLC's formation. *See Carlton Inv. v. TLC Beatrice Int'l Holdings, Inc.*, No. CIV.A. 13950, 1996 WL 33167168, at *3, *10 (Del. Ch. June 6, 1996). Similarly, in *Bank of New York*, the parties previously agreed to "delay formal discovery as they engaged in informal discovery, joint investigation, and 'exploration' of the issues." *In re Bank of New York Derivative Litig.*, Nos. 99CIV.9977(DC), 99CIV.10616(DC), 2000 WL 1708173, at *3 (S.D.N.Y. Nov. 14, 2000). Thus, the courts were concerned about tacking delay onto delay. There can be no such concern here, as there has been no prior stay of the proceedings. Indeed, prior to and concurrently with the parties' mediation efforts the parties engaged in document

---

[3] The Company does not believe that Plaintiffs will dispute that the delay in filing from October 5 to October 20 was in part related to Plaintiffs' counsel's request to delay the filing.

17835648.1

discovery, including serving and responding to document requests, negotiating the scope of production, and producing documents.

*Second*, *Bank of New York* is inapposite because it involved extreme facts, similar to those at issue in *Biondi* (*see infra* Part B), such that there were obvious doubts at the outset that the SLC's conclusions could ever be subject to deference. *See* 2000 WL 1708173, at *3 (noting "substantial questions . . . as to whether the members of the SLC are truly independent and disinterested," to the point that the court found it "difficult to imagine that the SLC will reach any conclusion other than that the complaint lacks merit and therefore should be withdrawn" regardless of its actual merit). One SLC member had "already resigned because of a potential conflict of interest" and the other two were "named defendants in this case and both began serving as board members . . . prior to the commencement of these lawsuits." *Id.* Here, there can be no such concerns. The SLC members are not named defendants and did not join the Board until well after the relevant period. *See* Robins Aff. ¶ 3.

*Third*, in *MRV*, the court found dispositive the fact that the "sole reason" the company articulated "for seeking a stay is to contain the costs of litigation."[4] *See In re MRV Commc'ns, Inc. Derivative Litig.*, No. CV 08-03800 GAF (RCx), 2011 WL 6608642, at *4-5 (C.D. Cal. Dec. 22, 2011). Here, in addition to containing costs, the rationale for a stay is to enable the SLC to perform an independent, unencumbered investigation into the merits of the claim. *See* Mot. at 7. The SLC is already in the midst of reviewing documents and interviewing relevant officers and directors. It would be unnecessarily burdensome and disruptive for the Company and its employees and directors to be subjected to duplicative discovery by these Plaintiffs about the same underlying course of events. *See Moradi v. Adelson*, No. 2:11-CV-00490-MMD, 2012 WL

---

[4] The court also highlighted plaintiffs' contention that the motion was a ruse to avoid "the discovery of incriminating documents." *MRV*, 2011 WL 6608642, at *4. There are no such allegations here.

6

3687576, at *4 (D. Nev. Aug. 27, 2012) ("[T]he SLC needs time to gather information from its numerous witnesses and review the voluminous documents it has gathered. . . . Plaintiffs will endure minimal prejudice by staying this action.").

Indeed, the *MRV* court recognized the "strong presumption that derivative litigation should be stayed pending an SLC investigation." 2011 WL 6608642, at *2.  The court noted that while there are certain limited exceptions to the "general trend," case law has interpreted the creation of an SLC as "requiring a near-automatic stay." *Id.* at *3, *4.  There is no basis to depart from that rule here.

### B. The SLC Members Have Not Prejudged The Outcome Of The SLC's Investigation

Plaintiffs' argument that the SLC members have prejudged this action is based on a misreading of an SEC filing and baseless allegations attempting to call into question the SLC's ability and intention to conduct an independent and objective investigation.  Plaintiffs' argument fails because the statement quoted by Plaintiffs from the Company's 2015 Annual Report was made by the Company and is not a statement of the directors, either individually or collectively.

Plaintiffs are asking this Court to recognize an exception to the automatic stay where members of the SLC have made public statements concerning the merits of the claims at issue— and to apply that exception to routine language by the Company in its Annual Report.  Because this exception has never been recognized by an Ohio court, Plaintiffs cite to a case outside this jurisdiction: *Biondi v. Scrushy*, 820 A.2d 1148 (Del. Ch. 2003).  But *Biondi* involved extreme facts not present here—it should not be used to create a new exception never before recognized in Ohio law and, in any event, it is wholly inapplicable to the facts at hand.

In *Biondi*, unlike here, an individual SLC member **personally** made prejudicial statements exonerating the subject of the SLC's investigation.  The court recognized a "very

7

narrow exception" to the automatic stay rule because the case "present[ed] an odd confluence of unusual and highly troubling facts," including that the SLC's chairman personally made an "extraordinary" public statement exculpating the company's CEO of the conduct under investigation "at a time when the SLC's own investigation was just getting underway." 820 A.2d at 1158, 1165-66 (finding that this "one fact alone . . . would warrant denying a stay"). As a result of these extreme facts, the court concluded that a stay was not warranted because it was "inconceivable that the SLC [would] ever be able" to demonstrate its independence if it later moved to dismiss the underlying claims. *Id.* at 1166.

Here, there have been no similar statements, or any relevant public statements of any kind, by the SLC members. Rather, Plaintiffs point to a routine statement made by the Company—***not*** by the Board of Directors and certainly not by the SLC members in their individual capacities—included in its Annual Report noting that "[w]e believe that the shareholder derivative and putative class action lawsuits are without merit, and we intend to defend ourselves vigorously against the allegations levied in these lawsuits." *See* Opp'n at 12; Big Lots, Inc., Annual Report (Form 10-K) at 67 (March 29, 2016). Standard language pertaining to ongoing legal proceedings in the Company's Annual Report is completely different from particularized, first-hand statements by an SLC member exonerating corporate insiders and raises none of the concerns that were present in *Biondi*. This Court should reject Plaintiffs' argument.

*First*, Plaintiffs' argument is based on an incorrect factual premise that the "we" in the excerpted language from the Annual Report means the Board as of March 29, 2016. Plaintiffs are wrong. The Form 10-K explicitly states that references to "we," "us," and "our" denote "Big Lots, Inc., an Ohio corporation, through its wholly owned subsidiaries." *See* Big Lots, Inc.,

Annual Report (Form 10-K) at 2 (March 29, 2016). Comparatively, when referring to actions taken by the Board, the Form 10-K references "our Board of Directors." *See, e.g.*, *id.* at 66; *see also* 15 U.S.C.A. §§ 78m, 78c(a)(8) (stating that every "issuer," defined in this case as the Company, is required to file certain disclosures, including an annual report or 10-K). Consequently, the statement identified by Plaintiffs plainly does not refer to the individual "belief" of any SLC member. Plaintiffs' assertion that the "SLC members actively prejudged the merits of the pending litigation" (Opp'n at 12) is based on a fundamental misreading of the Annual Report and is factually incorrect.

*Second*, courts have highlighted the distinction between routine language of this kind in a regulatory filing and individual prejudicial statements made by a director. In *Highland Legacy Ltd. v. Singer*, the Delaware Chancery Court analyzed similar statements in an SEC filing in the context of a plaintiff's allegation of demand futility. No. CIV.A. 1566-N, 2006 WL 741939 (Del. Ch. Mar. 17, 2006). In that case, the plaintiff argued "that the company's statement in its Form 8-K, '[The Company] believes that these lawsuits have no merit and intends to vigorously defend these lawsuits,' evidences the board's inability to prosecute these claims." *Id.* at *6. The court rejected plaintiff's argument, explaining:

> Public statements about the merits (or lack thereof) of derivative litigation are routinely made in SEC filings. It would be unreasonable for this court to conclude that a board made up of a majority of independent directors could not be asked to pursue this litigation simply because *the company expressed a belief* in a public filing that the claims in a series of related litigations were unfounded.

*Id.* (emphasis added). Accordingly, the court found that plaintiff's allegations did not "create a reasonable doubt that the majority of the [the Company's] board was disinterested or independent." *Id.* at *7.[5]

---

[5] Several courts have granted an SLC's motion to stay derivative proceedings despite the SLC members having previously signed SEC filings with similar language to that identified by Plaintiff. *See In re Take-Two Interactive*

17835648.1

The same conclusion follows here. Litigation disclosures such as the one at issue here are drafted by Company management, and a director is entitled under Ohio law to rely on management's opinions and statements concerning the merit of ongoing litigation when signing the Annual Report. *See* Ohio Rev. Code § 1701.59(C) (providing that "[i]n performing a director's duties, a director is entitled to rely on information, opinions, reports, or statements . . . that are prepared or presented by . . . officers, or employees of the corporation who the director reasonably believes are reliable and competent in the matters prepared or presented"); *cf. In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 135 (Del. Ch. 2009) (finding that directors were "fully protected" under similar Delaware law "in relying in good faith on the opinions and statements of the corporation's officers and employees who were responsible for preparing the company's financial statements"). This is not a statement of the belief or opinion of any individual director or the Board collectively, and consequently it raises none of the concerns present in *Biondi*. This Court therefore should reject Plaintiffs' attempt to impute the Company's "routine[]" language to the disinterested, independent SLC members who have expressed no personal views on the merits of the claims. *Highland Legacy*, 2006 WL 741939, at \*6.

---

*Software, Inc. Derivative Litig.*, No. 1:06CIV05279(LTS), 2007 WL 1875660, at \*1 (S.D.N.Y. June 29, 2007) (granting the SLC's motion to stay all proceedings notwithstanding the Company's 10-K which noted that "[w]e intend to vigorously defend and seek dismissal of these matters and, with respect to the derivative actions, we have been advised that the individual defendants will vigorously defend such actions." The 10-K was signed by two Directors who were also members of the SLC.); Take-Two Interactive Software, Inc., Annual Report (Form 10-K) at 35, 121 (Feb. 28, 2007); *see also In re InfoUSA*, 2008 WL 762482, at \*3 (granting SLC's motion to stay where Company's 10-K stated that the Company did not believe the lawsuit would have a material effect on its operations); InfoUSA, Inc., Annual Report (Form 10-K) at 18, 71 (Mar. 15, 2007); *Moradi v. Adelson*, No. 2:11-CV-00490-MMD-RJJ, 2012 WL 3687576, at \*4-5 (D. Nev. Aug. 27, 2012) (granting motion to stay where the Company's Form 10-K stated that the Company "intends to defend this matter vigorously" and was signed by the SLC members; further, despite the fact that three members of the SLC were named defendants in the derivative action, the court found that questions of SLC independence should not be addressed at the motion to stay stage, holding: "[J]udicial economy is served by permitting [the independence] issue to be addressed after the committee has issued its report, because the court may then consider questions of committee independence at the same time it examines the reasonableness of the bases for the committee's conclusion"); Las Vegas Sands Corp., Annual Report (Form 10-K) at 122, 160 (Feb. 29, 2012).

### C. A Stay Would Not Unduly Burden the Company

Contrary to Plaintiffs' contention, a stay would *decrease*, not increase, the burden on witnesses and the Company. The SLC and its independent counsel have already spent approximately three months investigating the underlying claims and have begun conducting interviews of relevant Company executives and directors. Engaging in simultaneous litigation discovery concerning the same facts and witnesses would be duplicative. Indeed, preventing the same individuals from being subject to simultaneous discovery about the same underlying facts and allegations by both Plaintiffs' counsel and the SLC is one of the underlying reasons that courts routinely grant a "near-automatic" stay in these circumstances. As the Delaware Chancery Court has explained:

> If a derivative plaintiff were to be permitted to depose corporate officers and directors and to demand the production of corporate documents, etc. at the same time that a duly authorized litigation committee was investigating whether or not it would be in the best interests of the corporation to permit the suit to go forward, the very justification for the creating of the litigation committee in the first place might well be subverted. Likewise, in effect, it would likely amount to simultaneous discovery of the same persons and materials by two separate sources, both allegedly acting on behalf of the corporation.

*Abbey v. Comput. & Commc'ns Tech. Corp.*, 457 A.2d 368, 375 (Del. Ch. 1983). Accordingly, this Court should reject Plaintiffs' contention that a stay would increase the burden on the Company and on witnesses.

### D. A Stay Would Not Prejudice Plaintiffs

A stay will not prejudice the interests of the Company and the shareholders, and the issue of prejudice should have nothing to do with whether these specific derivative Plaintiffs and their counsel have a continued role in pursuing the shareholders' interests. As long as the SLC assumes the delegated responsibilities of acting in the best interests of the Company and its shareholders, there is no need for Plaintiffs to pursue the claims derivatively, as their interests as

shareholders will be fully protected for the duration of the stay.  Should the SLC determine that pursuing the claim is not in the Company's best interests, Plaintiffs can challenge that determination at that time if they believe the SLC was not independent and disinterested.  But these Plaintiffs (and especially their counsel) have no independent right to pursue this claim, which is a claim that belongs to the Company.[6]  Under Ohio law, "[a] shareholder has no independent right to bring suit on behalf of the corporation," and the "responsibility for determining whether or not a corporation should pursue a claim for damages in court is ordinarily a matter of internal management left to the discretion of the directors." *Davis v. DCB Fin. Corp.*, 259 F. Supp. 2d 664, 670 (S.D. Ohio 2003); *see also In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 618 (6th Cir. 2008) ("[T]he responsibility for determining whether a corporation should use the courts to enforce a cause of action is, like other business questions, ordinarily a matter of internal management left to the discretion of the directors.").[7]  This principle is consistent with the "bedrock" tenet of Ohio corporate law that "the business

---

[6] In a similar vein is Plaintiffs' vague accusation that the Board of Directors supposedly created an SLC in "retaliation" for the parties' inability to reach an agreement at mediation.  That accusation is baseless.  More fundamentally, the Board is not constrained from doing what it considers to be in the Company's best interest by Plaintiffs' apparent disapproval of the Company's settlement posture or by Plaintiffs' (or their counsel's) desire for continued direct involvement in this matter.  Plaintiffs' bare allegations do not change the simple fact that the parties did not reach agreement on a settlement, and thereafter the Board made a non-controversial and fairly routine decision to create an SLC to investigate the claims and determine whether pursuing the litigation is in the best interest of the Company.  *See supra* Part A (collecting cases demonstrating that it is routine for companies to form SLCs at this stage).

[7] The Court's previous finding of demand futility as to the full Board—which included directors who were named defendants and who had served on the Board during the relevant period—does not carry over to the newly-created SLC comprised of three independent, non-defendant directors who joined the Board well after the relevant period. *See Abbey*, 457 A.2d at 372.  The Board retains "all of its corporate powers concerning litigation decisions" and, notwithstanding the fact that demand was excused, the Board has the power to "delegate its authority to a committee of disinterested directors, i.e., those unaffected by the disqualification factor, to determine whether the pending suit brought on behalf of the corporation should be maintained or whether it was in the best interests of the corporation to have it discontinued." *Id.*

and affairs of a corporation are managed by and under the direction of its board."[8] *Drage v. Procter & Gamble*, 119 Ohio App. 3d 19, 25 (1997).

Finally, the Court should reject Plaintiffs' contention that the discovery schedule in this case or in the Securities Action weighs against granting a stay. Despite Plaintiffs' claim that they somehow intend to "complete fact discovery by February 24, 2017" (Opp'n at 13), Plaintiffs have not noticed a single deposition, and it was not until approximately two weeks ago—while this motion for a stay was pending—that Plaintiffs first requested (informally and not by serving a Rule 34 request) that the Company produce to them the documents it has produced in the Securities Action. Until the Company formed an SLC, Plaintiffs' consistent position had been that due to the narrow scope of their corporate waste claim, the discovery they seek is distinct from, and much more targeted than, what is involved in the Securities Action. Indeed, until the Company filed this motion, Plaintiffs' position was that depositions could be coordinated but *not* consolidated with the Securities Action, and Plaintiffs were not willing to give up any discovery rights based on any coordination between the cases.

Accordingly this Court should "reject[] Plaintiffs' argument that temporarily staying this action will unduly prejudice them." *Moradi*, 2012 WL 3687576, at *4.

## II. CONCLUSION

A stay of all proceedings in this case is necessary to allow the SLC to conduct an independent and unencumbered investigation and carry out its mandate. A stay will also preserve judicial and party resources, and will result in no prejudice to the Company or its shareholders in whose interests Plaintiffs are prosecuting this action.

---

[8] *See* Ohio Rev. Code § 1701.59 ("Except where the law, the articles, or the regulations require action to be authorized or taken by shareholders, all of the authority of a corporation shall be exercised by or under the direction of its directors.").

17835648.1

        Respectfully submitted,

        */s/ James D. Abrams*
        James D. Abrams (0075968 – *Trial Attorney*)
        Arthur F. McMahon, III (0086163)
        Chad R. Ziepfel (0084274)
        TAFT STETTINIUS & HOLLISTER LLP
        65 East State Street, Suite 1000
        Columbus, Ohio 43215
        Ph: (614) 221-2838
        Fx: (614) 221-2007
        jabrams@taftlaw.com
        amcmahon@taftlaw.com
        cziepfel@taftlaw.com
        *Attorneys for Nominal Defendant Big Lots, Inc.*

## **CERTIFICATE OF SERVICE**

  I certify that on December 1, 2016, I filed the foregoing using the Court's CM/ECF system, which will send electronic notice of such filing to all parties of record.

<em>/s/ James D. Abrams</em>

17835648.1