UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

IN RE BIG LOTS, INC.
SHAREHOLDER LITIGATION

Case No. 2:12–cv–445

Judge Michael H. Watson

Magistrate Judge Jolson

## OPINION AND ORDER

Louisiana Municipal Police Employees' Retirement System ("LAMPERS") and City of Atlanta Firefighters' Pension Fund ("Atlanta Firefighters," and together with LAMPERS, "Lead Plaintiffs"), plaintiff Lorene Lamb ("Lamb," and together with LAMPERS and Atlanta Firefighters, the "Consolidated Plaintiffs"), and additional plaintiff Alan Brosz ("Brosz," and together with the Consolidated Plaintiffs, "Plaintiffs") move for an order granting final approval of a derivative litigation settlement ("Settlement")[1] with Defendants Jeffrey Paul Berger, Steven S. Fishman,  David T. Kollat, Brenda J. Lauderback, Philip E. Mallot, Russell Solt, Dennis B. Tishkoff, Joe R. Cooper, Charles W. Haubiel II, Timothy A. Johnson, Robert Craig Claxton, John Charles Martin, Norman J. Rankin, Paul Alan Schroeder, Robert Samuel Segal, and Steven Ray Smart (the "Individual Defendants"), and nominal defendant Big Lots, Inc. ("Big Lots" or the "Company," and together with the Individual Defendants, the "Defendants"),

---

[1] The Settlement is memorialized between the parties in a Stipulation and Agreement of Settlement dated December 14, 2017.  ECF No. 116-1.

acting through its Special Litigation Committee ("SLC"). ECF No. 121. Plaintiffs

also move for an award of attorney's fees and expenses. ECF No. 122. Both

motions are unopposed. For the following reasons, Plaintiffs' motions are

**GRANTED**.

## I. BACKGROUND

The background of this case is laid out in great detail in the unopposed

motion for final approval, ECF No. 121, and does not need to be repeated in-

depth in this Opinion except as necessary to analyze the reasonableness of the

Settlement. As an initial overview, it suffices to say that Plaintiffs' only remaining

claim against Defendants is for corporate waste by some of Big Lots' current and

former officers and directors in connection with an alleged insider selling scheme

and stock repurchase plan. After multiple lawsuits were filed, protracted

discovery, rulings on some dispositive motions, and multiple rounds of mediation,

the parties agreed on the Settlement. On April 6, 2018, the Court preliminarily

approved the Settlement. ECF No. 120. On July 26, 2018, the Court held a

fairness hearing. The Court now considers whether final approval of the

Settlement is warranted.

## A. The Proposed Settlement

The Settlement consists of two primary components: monetary relief and

corporate governance reforms. First, Defendants have agreed that Big Lots'

directors' and officers' insurance carriers will pay Big Lots $3.5 million.

According to Plaintiffs' counsel, this payment represents a substantial percentage

of the potential damages, which were estimated to be between $8.2 million and

$9.8 million. Joint Decl. ¶ 49, ECF No. 123. This money will be used to pay

Plaintiffs' counsel's legal fees and expenses in this action as well as a portion of

the settlement in a separate class action lawsuit (the "Willis Class Action").

Second, the parties have agreed that Big Lots will implement the following

corporate governance reforms:

- Strengthening the Company's Insider Trading Policy, including implementing enhanced recordkeeping requirements for pre-clearance requests and a requirement that the General Counsel reports to the Nominating/Corporate Governance Committee on a semiannual basis about the Company's trading compliance program and related topics;

- Continuing to maintain a claw back policy that empowers the Compensation Committee of the Board of Directors to seek recovery of any excessive incentive-based compensation paid to any employee whose misconduct is found to have contributed to the Company's having to prepare an adverse accounting restatement;

- Engaging an outside consultant to provide continuing education to the Board of Directors on corporate governance topics including insider trading and securities laws;

- Enhancing the Company's Whistleblower Hotline procedures, including requiring the Audit Committee to receive and memorialize a report concerning any whistleblower complaint and follow-up action taken related to insider trading; and

- Amend the Company's Corporate Governance Guidelines requiring all directors to attend the Company's annual shareholder meeting in person.

## B.    Notice

Big Lots submitted the affidavit of Robert W. Trafford ("Trafford"), one of

the attorneys for the SLC. ECF No. 126. Trafford avers that Big Lots has

complied with the notice provisions of the Preliminary Approval Order by

(a) Posting the Notice of Pendency and Proposed Settlement of Stockholder Derivative Litigation (the "Notice") and the Stipulation and Agreement of Settlement ("Stipulation") on its corporate website on April 13, 2018, where they have remained continuously since that date; and

(b) Filing the Stipulation and Notice as a Current Report on Form 8-K with the United States Securities and Exchange Commission on April 12, 2018 and posting the Form 8-K on its corporate website on April 13, 2018 where it has remained continuously since that date.

*Id.* at 1–2. The Court finds that there was sufficient notice provided to shareholders pursuant to Federal Rule of Civil Procedure 23.1.

## II. APPROVAL OF THE PROPOSED SETTLEMENT

This derivative action may only be settled with the Court's approval. Fed. R. Civ. P. 23.1(c). The Court "enjoys wide discretion in evaluating the settlement of derivative actions under Rule 23.1." *McDannold v. Star Bank, N.A.*, 261 F.3d 478, 488 (6th Cir. 2001) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205–06 (6th Cir. 1992)). "Settlements are welcome" in derivative actions and, "[a]bsent evidence of fraud or collusion, such settlements are not to be trifled with." *Granada*, 962 F.2d at 1205 (citations omitted). Relevant factors in evaluating the settlement "include the likelihood of success on the merits, the risk associated with the expense and complexity of litigation, and the objections raised by class members." *Id.* This Court has, on at least one occasion, also considered the other Rule 23(e) factors in determining whether a derivative action settlement should be approved. *McDannold v. Star Bank, N.A.*, No. C-1-94-002, 1999 U.S. Dist. LEXIS 22158, at *13 (S.D. Ohio June 2, 1999) (also

considering the amount of discovery conducted, whether the settlement was the result of an arms-length negotiation as opposed to fraud or collusion, and the opinion of counsel representing the parties), *vacated on other grounds*, 261 F.3d 478 (6th Cir. 2001). Based on all of these factors, the Court determines that the Settlement is fair, reasonable, and adequate.

## A.    Likelihood of Success on the Merits

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011) (quoting *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984)).

Both in the motion for final approval and at the fairness hearing, Plaintiffs asserted that they faced significant risks to successfully prosecuting their claims, including defeating the SLC's motion to dismiss and demonstrating Defendants' bad faith breaches of duty and resulting corporate waste. Mot. 21, ECF No. 121. Defendants assert in their motion to dismiss that the SLC's determination that it was not in Big Lots' best interest to pursue a corporate waste claim is entitled to great deference. Mot. to Dismiss 20, ECF No. 100. Plaintiffs go so far as to state in their motion for final approval that their corporate waste claim "would have been exceptionally difficult to prove." Mot. 18, ECF No. 121. Defendants were already successful on some dispositive motions in this case and had

winnowed down the claims brought to only corporate waste.  The likelihood of success for Plaintiffs was far from assured.  Thus, this factor weighs in favor of approval of the Settlement.

### B.     Complexity, Expense, and Likely Duration of the Litigation

As the Sixth Circuit has noted, derivative actions are "notoriously difficult and unpredictable." *Granada*, 962 F.2d at 1205 (quoting *Maher v. Zapata Corp.*, 714 F.2d 436, 455 (5th Cir. 1983)).  "[A]voiding the delay, risks, and costs of continued litigation against a defendant is a valid reason for counsel to recommend and for the court to approve a settlement." *In re Nationwide Fin. Servs. Litig.*, No. 2:08-cv-249, 2009 U.S. Dist. LEXIS 126962, at *10 (S.D. Ohio Aug. 18, 2009).

This litigation has already lasted several years.  Absent settlement, continued litigation of this case would likely take more than a year and result in the parties incurring significant expense.  There is a pending motion to dismiss, which would likely be followed by motions for summary judgment, expert discovery and *Daubert* motions, and a complex trial.  Additionally, the parties are represented by very sophisticated counsel that would undoubtedly vigorously prosecute and defend the claims in this case.  This supports settlement.

C.      Objections Raised by Shareholders

After having provided sufficient notice, no shareholder objected to the settlement. This is strong evidence that shareholders believed the settlement to be fair, reasonable, and adequate.

D.      The Amount of Discovery Engaged in By the Parties

To confirm that Plaintiffs "have had access to sufficient information to evaluate their case and to assess the adequacy of the proposed Settlement," the Court considers the amount of discovery engaged in by the parties. *In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 374 (S.D. Ohio 2006). "In considering whether there has been sufficient discovery to permit the plaintiffs to make an informed evaluation of the merits of a possible settlement, the court should take account not only of court-refereed discovery but also informal discovery in which parties engaged both before and after litigation commenced." *UAW v. Gen'l Motors Corp.*, No. 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006). In this consideration, "the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties." *Id*.

The document production in this case totaled nearly 1,000,000 pages of documents. Mot. 17, ECF No. 121. The discovery process was hard fought at times, requiring multiple meetings between the parties and court resolution of some of the disputes. There has been no indication that Plaintiffs lacked

information necessary to assess the strength of their case, which supports

approval of the Settlement.

### E.    Arm's-Length Negotiation

The Court finds that there is no evidence—or even a suggestion—that the

settlement was the product of fraud or collusion.  *See IUE-CWA v. Gen. Motors*

*Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of

fraud or collusion unless there is evidence to the contrary.").  The Settlement is

the result of arm's-length, well-researched, and protracted negotiations that took

place over the course of multiple years and involved at least two different

mediation sessions with Robert A. Meyer, Esq., an experienced mediator.  This

favors approval of the Settlement.

### F.    The Opinion of Counsel

The Court gives significant weight to the opinions of Plaintiffs' counsel,

who have indicated that the Settlement is fair, reasonable, and adequate.  *See,*

*e.g., Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court

should defer to the judgment of experienced counsel who has competently

evaluated the strength of his proofs . . . . [T]he deference afforded counsel

should correspond to the amount of discovery completed and the character of the

evidence uncovered.").  The SLC's counsel has also expressed the opinion that

the Settlement benefits the Company.  *See* Joint Decl. ¶ 55, ECF No. 123.

In this case, Class Counsel have extensive experience in complex

shareholder derivative and class action litigation and corporate matters.  *See*

*generally* ECF Nos. 123–25 (providing years of experience and background of counsel).  After significant discovery and protracted arm's-length negotiations, the parties reached the Settlement.  Equipped with extensive experience, counsel have concluded that the Settlement is a good result for Plaintiffs and the Company.  The Court therefore finds that this factor favors approval of the Settlement.

After considering the relevant factors, the Court **APPROVES** the Settlement.

### III. ATTORNEY'S FEES AND COSTS

#### A.    Attorney's Fees

Plaintiffs' counsel has moved for an award of attorney's fees and costs. ECF No. 122.  Defendants do not oppose the motion.  In order to assess the reasonableness of the fee request, the Court first determines the method Plaintiffs' counsel used to calculate the fee.  In this case, Plaintiffs are seeking a percentage of the fund award.  Specifically, Plaintiffs' counsel seeks $1.25 million in fees, which represents 35.7% of the $3.5 million monetary settlement.  Fee Mot. 8, ECF No. 122.

Next, the Court must analyze the factors laid out in *Ramey v. Cincinnati Enquirer, Inc.*, which include:

> 1) the value of the benefit rendered to the corporation or its stockholders, 2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others, 3) whether the services were undertaken on a contingent fee basis, 4) the value of the services on an hourly basis, 5) the

complexity of the litigation, and 6) the professional skill and standing of counsel involved on both sides.

508 F.2d 1188, 1196 (6th Cir. 1974). Each of these factors favors approval of the requested attorney fee award.

First, the Court finds that the Settlement confers a substantial benefit on Plaintiffs. As discussed above, the $3.5 million payment represents a substantial percentage of the potential recovery in this case. Furthermore, as described both in the motion for final approval of the Settlement and at the fairness hearing, the corporate governance reforms that are included in the Settlement will be meaningful in preventing any future misconduct by Big Lots' officers and directors.

Second, society's stake in rewarding attorneys who produce such benefits supports an award of the requested attorney's fees. It is certainly in society's interest to have fiduciary laws and regulations enforced. If experienced counsel, such as the attorneys who represented Plaintiffs here, were unwilling to take on derivative action lawsuits for fear of not being compensated, it would be more difficult to enforce accountability for officers and directors.

Third, Plaintiffs' counsel agreed to undertake this case on a wholly contingent basis. See Fee Mot. 18, ECF No. 122. In doing so, Plaintiffs' counsel assumed a real risk by expending time, effort, and money over a period of approximately six years with no guarantee of recovery. This factor weighs in favor of approving the requested fee award.

The Court next considers whether the fourth factor, the value of the services on an hourly basis, favors the proposed fee award.  A cross-check using Plaintiffs' counsel's lodestar weighs in favor of granting the requested fee award. Plaintiffs' counsel has provided evidence that they devoted 6,016.06 hours to this case and incurred a total lodestar of $2,843,323.50.  Joint Decl. ¶ 60, ECF No. 123.  The Court has reviewed the declarations of Plaintiffs' counsel and finds the blended rate charged and hours incurred to be reasonable based on the location and experience of counsel.[2]  Therefore, the requested lodestar multiplier with respect to fees is approximately 0.44.  In other words, Plaintiffs' counsel is taking a substantial discount on their fees as a result of the contingent fee nature of their representation, which strongly supports approval.  *See  Kritzer v. Safelite Sols.*, LLC, No. 2:10–cv–0729, 2012 WL 1945144, at *10 (S.D. Ohio May 30, 2012) ("As for the value of the services rendered on an hourly basis, this factor

---

[2] On August 24, 2018, well after the time to object and the fairness hearing took place, the Court received an email from Michael Hartlieb ("Hartlieb"), a shareholder who had an interest in a different case involving The Weiser Law Firm, P.C. ("Weiser").  In his email, Hartlieb raised concerns over Weiser's billing practices in this prior case and stated that he wanted to inform the Court so that it could scrutinize the fee request in this case.  Hartlieb does not indicate that he is a shareholder in Big Lots or otherwise an interested party in this case.  Furthermore, the Court always scrutinizes the billing records of plaintiffs' counsel before approving fee awards.  Nevertheless, out of an abundance of caution, the Court re-reviewed Weiser's billing entries in this case and sees no similarities to the billing issues that may have occurred in the case involving Hartlieb. The Court held a teleconference with the parties on August 24, 2018, on which James Ficaro, one of the attorneys from Weiser, was afforded the opportunity to respond to Hartlieb's email.  The Court is fully satisfied that the hours billed by Weiser were reasonable in this case.

strongly favors the fee requested . . . . The amount of fees requested . . . is less than what the fee would be under a lodestar calculation.").

The remaining two factors, the complexity of the litigation and the professional skill and standing of the attorneys involved, has been discussed above and also supports approval of the attorney's fee request.

For all of these reasons, the Court concludes that Plaintiffs' counsel's request for $1.25 million in attorney's fees is reasonable.

## B.    Expenses

"Under the common fund doctrine . . . counsel is entitled to reimbursement of all reasonable out-of-pocket expenses and costs in the prosecution of claims, and in obtaining settlement, including but not limited to expenses incurred in connection with document productions, consulting with and deposing experts, travel and other litigation-related expenses." *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 532 (E.D. Mich. 2003).

Plaintiffs' counsel has provided documentation to support $46,740.59 in expenses in prosecuting this action.  These expenses include, among other things, mail costs, meals, lodging, transportation, legal research, copying costs, telephone expenses, and court filing fees.  *See* Joint Decl. Exs., ECF No. 123. These types of expenses are reasonable and necessary, and therefore entitled to reimbursement.  *Rikos v. P&G*, No. 1:11-cv-226, 2018 U.S. Dist. LEXIS 72722, at **27–28 (S.D. Ohio April 30, 2018).

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the unopposed motion for final approval of the settlement, ECF No. 121, **GRANTS** the unopposed motion for an award of attorney's fees and expenses, ECF No. 122, and **ORDERS** as follows:

1.    The Settlement is a fair, reasonable, and adequate resolution to this case for all parties, and is finally approved;

2.    To the extent not already done, the parties are **ORDERED** to perform under the terms of the Settlement;

3.    Plaintiffs' counsel are awarded $1,250,000 in attorney's fees and $46,740.59 in expenses, which shall be paid to lead counsel for distribution in accordance with the Settlement;

4.    The Court retains jurisdiction over this matter for purposes of enforcing the Settlement;

5.    This action is **DISMISSED with prejudice**, with each party to bear its own costs, except as described above.  The Clerk is **DIRECTED** to enter **FINAL JUDGMENT**.

**IT IS SO ORDERED.**

MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT